**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**MONKEY JUNGLE, INC.,**

      **Plaintiff,**

      v.

**UNITED STATES SMALL BUSINESS**
**ADMINISTRATION et al.,**

      **Defendants.**

**Civil Action No. 22-2537 (JDB)**

<u>**MEMORANDUM OPINION**</u>

Monkey Jungle, Inc. challenges the Small Business Administration's ("SBA") denial of its application for COVID-19 relief funding. In its funding application, the self-described "eco-show park and discovery center" contended that its live shows featuring "Jungle Guides" interacting with monkeys and gorillas engaged in natural behaviors were "events by performing artists." As such, Monkey Jungle claimed that it was a "live venue operator" for purposes of obtaining a Shuttered Venue Operators Grant ("SVOG"). SBA rejected this characterization, concluding that Monkey Jungle was "essentially a zoo" engaged primarily in the "exhibition of animals." Monkey Jungle argues that this conclusion was arbitrary, capricious, and contrary to the evidence in the record, and that it was treated disparately from circus and rodeo applicants that also put on shows involving paid performers interacting with animals. Before the Court are Monkey Jungle's motion for summary judgment and SBA's cross-motion for summary judgment. For the following reasons, the Court will deny Monkey Jungle's motion and grant SBA's cross-motion.

**Background**

I.   **Shuttered Venue Operators Grant Program**

When the COVID-19 pandemic began, "[e]vent venues were the first to close," and Congress predicted that they would be among "the last [businesses] to open once it [was] gone." 166 Cong. Rec. S7901 (Dec. 21, 2020) (statement of Sen. Cornyn).  To help event venues "stay afloat until that long-awaited day," id., Congress passed a law authorizing grants of up to $10 million for entertainment venue operators who lost significant revenue during the lockdowns. Consolidated Appropriations Act, 2021, Pub. L. No. 116-260, § 324, 134 Stat. 1182, 2022 (2020) (codified at 15 U.S.C. § 9009a).   Congress appropriated $16.25 billion to fund the grants, id. § 323(d)(1)(H), 134 Stat. at 2021 (appropriating $15 billion); American Rescue Plan Act of 2021, Pub. L. No. 117-2, § 5005(a), 135 Stat. 4, 91 (appropriating additional $1.25 billion), and tasked SBA with administering the program, see 15 U.S.C. § 9009a(b).

The statute provides that SBA "may" make initial and supplemental grants to an "eligible person or entity," 15 U.S.C. § 9009a(b)(2)(A), (b)(3)(A), which includes, as relevant here, a "live venue operator or promoter," and "live performing arts organization operator," id. § 9009a(a)(3)(A)(i)(I).  The statute defines a live venue operator or promotor, theatrical producer, or live performing arts organization operator as an individual or entity "that, as a principal business activity, organizes, promotes, produces, manages, or hosts live concerts, comedy shows, theatrical productions, or other events by performing artists."  Id. § 9009a(a)(3)(A)(i)(I) (emphasis added). To be eligible for relief, the entity must also impose a cover charge, pay its performers, and earn not less than seventy percent of its revenue through "cover charges or ticket sales, production fees or production reimbursements, nonprofit educational initiatives, or the sale of event beverages, food, or merchandise."  Id. § 9009a(a)(3)(A)(i)(II).

SBA issued guidance to assist entities submitting their SVOG applications.  In this FAQ document, SBA explained that in determining whether a business activity is a qualifying "performing arts event," it would apply the following standard:

> The SBA believes performing arts as related to the SVOG program means events such as musical concerts, comedy shows, theatrical productions, dance performances, or other live renderings of similarly artistic works.  This is based on review of the Economic Aid Act text, SBA's consultation with other Federal agencies with area expertise and examination of definitions of what constitutes the performing arts under Federal law.

Redacted Rule 7(n) Appendix ("A.R.") [ECF No. 32-1] at 369.  Further, SBA defined principal business activity as "the line of business in which the entity has the greatest combined amount of revenues, expenses, employees and work hours, assets, contracts, and other business activity as compared to all its other lines of business."  Id. at 401.

## II.    Monkey Jungle

Monkey Jungle is a "unique eco-show park and discovery center established in 1935 in a natural subtropical forest in [South Florida], where [t]he Jungle wildlife live much as they would in their natural habitats."  A.R. 24.  The eco-show park features daily shows with "Jungle Guides," who "take [visitors] deep into the forest for . . . regularly scheduled Shows and Performances with the Jungle wildlife."  Id.  Monkey Jungle advertises itself to be "[a]s entertaining as a circus, but much more engaging with natural behaviors in natural habitats!"  Id.

Monkey Jungle's "live entertainment" takes place in three different show spaces situated amid a "natural, jungle-themed setting."  Id. at 26.  The show spaces are equipped with sound and lighting, and two of them—spaces #1 and #2—include fixed seating.  The illustration below depicts Monkey Jungle's grounds, which includes the three show spaces and a guest services and gift shop area, surrounded by a large habitat.



Id.  The schematic below illustrates one of Monkey Jungle's performance spaces.  Space #1 includes a covered performance area bordered by a water feature, as well as a covered seating area with bleachers and bathrooms.  The "show host" has a designated place by the habitat.



Id. at 27.

4

On a daily basis, Monkey Jungle offers scheduled performances of three different shows.



Id. at 341.  The "Wild Monkey Swimming Pool Show" is a "natural showcase" in which a "Jungle Guide calls the troop [of monkeys] up from the forest," and "lucky" visitors might "see them skin dive."  Id.  The "Cameroon Gorilla Forest Show" lets visitors "[e]xperience the wonder of gorillas as our King of the Jungle and your Jungle Guide interact at a distance, showcasing natural behaviors and exercise routines."  Id. at 342.  In the "Amazonian Rainforest Show," monkeys that live here "roam as they please—and visitors, students, and researchers can observe them behaving as they would in the wild."  Id.  Monkey Jungle also hosts "Wings of Love Foundation, a non-profit organization that create[s] a sanctuary for captive parrots that are displaced."  Id.  In addition to attending the jungle-themed shows, visitors may wander through the natural habitats.  Id. at 339.

## III.  Monkey Jungle's SVOG Application

Like many small businesses offering in-person entertainment to the public, Monkey Jungle was forced to suspend its shows beginning in May 2020 due to the COVID-19 pandemic.  See

A.R. 22, 24.  Although Monkey Jungle was able to reopen on a "very limited basis" in March/April 2021, the revenue was not sufficient to support the operation.  Id. at 22.  To help lessen the pandemic's impact on its business, Monkey Jungle sought an SVOG grant from SBA.  Id. at 2.

On May 21, 2021, Monkey Jungle applied for an $828,486.90 grant as a live venue operator putting on "events by performing artists."  Id. at 2–3, 13.  SBA denied the application without explanation.  Id. at 2.  Monkey Jungle timely appealed.  Id. at 19.  In its "Justification Statement," Monkey Jungle contended that it qualified for funding as a "live venue operator," because it offers "a programmed show sequence . . . performed by paid performers with live animals, in the main indoor/outdoor space and others."  Id. at 21.  SBA declined to alter its decision "[a]fter a thorough and comprehensive review" of Monkey Jungle's appeal, "at least in part" because Monkey Jungle "[d]id not meet the principal business activity standard for the entity type under which [it] applied" and "[d]id not meet one or more of the eligibility criteria specific to the entity type under which [it] applied."  Id. at 16–17.

In response to the appeal denial, Monkey Jungle sent a letter to SBA requesting reconsideration.  See Compl. [ECF No. 1]  ¶ 27.  Receiving no response, Monkey Jungle filed the present lawsuit against SBA and its administrator, Isabella Casillas Guzman, in her official capacity, challenging the award denial as arbitrary, capricious, an abuse of discretion, contrary to law, and unsupported by substantial evidence under the Administrative Procedure Act, 5 U.S.C. § 706 ("APA").  Compl. ¶¶ 38–57.  In its complaint, Monkey Jungle also contended that SBA treated it disparately from seven similarly situated businesses: (1) Carden International Circus, Inc., (2) Carson and Barnes Circus, Inc., (3) Hanneford Circus, Inc., (4) Arcadia All-Florida Championship Rodeo, Inc., (5) Flint Hills Rodeo Association, (6) Indian National Finals Rodeo,

and (7) Cavallo Equestrian Arts, "all of which offer paid performers interacting with live animals."

Compl. ¶ 41.

Before its answer was due, SBA "exercised its inherent authority to rescind its decision on [Monkey Jungle's] SVOG application to thoroughly examine the allegations in the Complaint prior to issuing a new decision." Consent Mot. for Stay [ECF No. 9] at 2. On January 12, 2023, SBA issued a "new final Agency decision" denying Monkey Jungle's SVOG application. A.R. 345. The application was denied because "the record evidence fails to show that Monkey Jungle's principal business activity is an eligible SVOG business activity as set forth in 15 U.S.C. § 9009a(a)(3)(A)(i)(I)." Id. at 347. The agency reasoned:

> In its appeal, Monkey Jungle states that it is a live venue operator, offering live entertainments with performers and animals. See Justification Statement 8-16-2021. However, the review of Monkey Jungle's records show that it is essentially a zoo; all of the revenue, expenses, work hours, and other resources are devoted to an operation of a zoo. See Question 21; see also Question 25. While zoos that are non-profits can qualify for SVOG awards in the category of museums, only non-profit museums can receive SVOG awards under the statute. As a for-profit zoo/museum, Monkey Jungle was judged ineligible for an SVOG as a live venue operator or promoter.

> Monkey Jungle's descriptions of its shows confirm that they are primarily animal exhibitions. For example, "Cameroon Gorilla Forest Shows" shown on Monkey Jungle's website describes the show as "[e]xperience the wonder of gorillas as our King of the Jungle and your Jungle Guide interact at a distance, showcasing natural behaviors and exercise routines." Monkey Jungle – Website. The other four shows listed on its website have similar descriptions.

> Furthermore, even if there were live artistic performance component to Monkey Jungle's animal exhibitions, that by itself would be insufficient to satisfy the principal business activity requirement. As noted in the guidance, an applicant cannot be determined to have a qualifying principal business activity by simply having a qualifying component. See FAQ 50 (Live Venue Operator or Promoter); see also FAQ 22 (Eligibility). The qualifying performances must be the main crux of the business activities. Id. Monkey Jungle has failed to provide evidence that its main business activity is to present eligible live artistic performances by paid performers. As a matter of fact, there is no evidence, which indicates that any component of Monkey Jungle's business activity even involves eligible live artistic performances. As mentioned above, the description of all the shows listed on

> Monkey Jungle's website, along with the documents submitted, supports this conclusion.  See Monkey Jungle – Website; Appeal questions (1) (4) (6).

Id. at 346–47 (emphasis added).  The agency further reasoned that because Monkey Jungle's live performances did not qualify under the statute, Monkey Jungle failed to demonstrate that seventy percent of its revenues derived from cover charges, tickets, and other payments related to covered events.  Id. at 347–48.

In its denial letter, SBA also rejected the contention that Monkey Jungle was treated disparately from the seven comparators listed in the Complaint.

> SBA's preliminary re-evaluation analysis of these seven entities indicates that, in each case, the applicant conducted significant live events with skilled performers which are the principal attraction of the applicant's business.  They do not simply display animals or provide interactions with animals.  These seven other entities are either circuses or rodeos that host significant live performances and, therefore, are not similarly situated to Monkey Jungle.

Id. at 348.  SBA noted that it had prepared a "confidential memorandum . . . concerning the review of alleged competitors" which would not be disclosed because "the analyses include information from the confidential business records of those entities."  Id.  SBA stated that its review of the comparators "did not change the SBA's final decision as to Monkey Jungle's ineligibility."  Id.  Monkey Jungle then filed an amended complaint addressing the final decision.  Am. Compl. [ECF No. 13].

## IV.    Present Motions

After initial motions practice,[1] the parties moved for summary judgment.  The motions principally turn on three issues.  First, Monkey Jungle contends that SBA's decision is "arbitrary,

---

[1] On March 3, 2023, SBA filed a motion to stay pending the D.C. Circuit's decision in Concert Investor LLC v. SBA, No. 22-5253 (D.C. Cir.).  Mot. to Stay [ECF No. 14].  Before the D.C. Circuit was the question whether the cases were mooted by Congress's December 2022 recission of all remaining, unobligated SVOG funds.  Id. at 1.  The Court granted SBA's stay motion, and the cases were stayed until SBA, on August 1, 2023, withdrew its mootness arguments upon recovering about $28 million in previously appropriated funds.  See Notice Regarding Mootness [ECF No. 19]; Aug. 11, 2023 Min. Order (lifting stay).

capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), because SBA ignored or misconstrued evidence in the Administrative Record that "directly contradicts SBA's unsupportable conclusion that Monkey Jungle is 'essentially a zoo,'" Pl.'s Mem. of P. & A. in Supp. of its Mot. for Summ. J. [ECF No. 22-1] ("Pl.'s Mot.") at 2 (quoting A.R. 346).  SBA, in its cross-motion and opposition, argues that it properly concluded, pursuant to the SVOG statute and its own guidance, that Monkey Jungle's "principal business activity" was the exhibition of animals and, therefore, not a qualifying live performing arts event.  Mem. of P. & A. in Supp. of Defs.' Cross-Mot. for Summ. J. & in Opp'n to Pl.'s Mot. [ECF No. 24-1] ("Defs.' Cross-Mot. & Opp'n") at 5–16.

Second, Monkey Jungle contends that SBA's decision was arbitrary and capricious because SBA has not "offered a reasonable or detailed explanation" for treating Monkey Jungle differently from "similarly situated businesses, such as rodeos and circuses, that also feature paid performers interacting with animals."  Pl.'s Mot. at 2.  SBA rejects the suggestion that the compared entities are analogous.  Defs.' Cross-Mot. & Opp'n at 16–19.

Third, Monkey Jungle contends that certain evidence—the pre-lawsuit reconsideration letter and the confidential comparator memorandum—was improperly excluded from the Administrative Record and that the Court should draw an "adverse inference" from the exclusion of the confidential memorandum.  Pl.'s Mot. at 6 n.2; Pl.'s Combined Reply Brief in Supp. of Pl.'s Mot. & Opp'n to Defs.' Cross-Mot. [ECF No. 26] ("Pl.'s Reply & Opp'n") at 6–10.  SBA asserts that those documents were appropriately excluded from the record since they did not factor into the agency's decision and that, in any event, any error was harmless.  Defs.' Cross-Mot. & Opp'n at 19–21; Reply in Supp. of Defs.' Cross-Mot. [ECF No. 29] ("Defs.' Reply") at 5–7 & n.2.

**Legal Standard**

Under § 706 of the APA, a court must "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "[W]hen a party seeks review of agency action under the APA, the district judge sits as an appellate tribunal." Am. Bioscience, Inc. v. Thompson, 269 F.3d 1077, 1083 (D.C. Cir. 2001). The role of the court on summary judgment is to decide, as a matter of law, "whether the agency adhered to the standards of decisionmaking required by the APA." Marshall Cnty. Health Care Auth. v. Shalala, 988 F.2d 1221, 1226 (D.C. Cir. 1993).

Review under the APA is "highly deferential," Defs. of Wildlife v. Jewell, 815 F.3d 1, 9 (D.C. Cir. 2016), and the court must take care not to "substitute its judgment for that of the agency," Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co. ("State Farm"), 463 U.S. 29, 43 (1983). However, review is more than a rubber stamp:

> [The court] must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

Id. (internal citations omitted). In making these determinations, "the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error." 5 U.S.C. § 706. "The party challenging an agency's action as arbitrary and capricious bears the burden of proof." City of Olmsted Falls v. FAA, 292 F.3d 261, 271 (D.C. Cir. 2002) (cleaned up).[2]

---

[2] Monkey Jungle also argues that SBA's decision is not supported by "[s]ubstantial evidence." See Pl.'s Mot. at 8–9. As a technical matter, the APA only provides for substantial evidence review in formal adjudications (whereas the relevant decision appears to be an informal adjudication). See 5 U.S.C. § 706(2)(E) (referring to formal proceedings when applying substantial evidence review); see also Allentown Mack Sales & Serv., Inc. v. N.L.R.B.,

## Analysis

**I.   Scope of the Record**

Before turning to the merits, the Court will address three issues raised as to the record and the parties' briefing.

### A.  Monkey Jungle's July 27, 2022 Letter to SBA

First, Monkey Jungle argues that the prelitigation letter to SBA was improperly excluded from the Administrative Record because it was "in SBA's possession prior to the final decision challenged in this litigation."  Pl.'s Mot. at 6 n.2; see Am. Compl., Ex. 1 [ECF No. 13-1].  SBA contends that the letter had no place in the Administrative Record because it was not received or reviewed in the course of decision.  Defs.' Cross-Mot. & Opp'n at 19–21.

At the outset, the Court notes that Monkey Jungle has not moved to complete or supplement the Administrative Record, which alone is reason to reject its argument for inclusion.  Cmty. Health Sys., Inc. v. Burwell, 113 F. Supp. 3d 197, 224 n.17 (D.D.C. 2015).  But even if Monkey Jungle had made such a motion, inclusion of the letter would still not be appropriate.  In an APA case, the Court's review is generally limited to the full administrative record that was before the agency at the time of decision.  Taylor Energy Co. v. United States ex rel. U.S. Coast Guard Nat'l Pollution Funds Ctr., Civ. A. No. 20-1086 (JDB), 2021 WL 538052, at *2 (D.D.C. Feb. 15, 2021).  The full administrative record consists of "'all documents and materials that the agency directly or indirectly considered' in making its decision."  Id. (quoting Oceana, Inc. v. Ross, 454 F. Supp. 3d 62, 68 (D.D.C. 2020)).  An agency is entitled to a strong "presumption of regularity, that it properly

---

522 U.S. 359, 377 (1998) ("On-the-record agency factfinding, however, is also governed by a provision that requires the agency action to be set aside if it is 'unsupported by substantial evidence.'" (quoting 5 U.S.C. § 706(2)(E))).  In any event, the D.C. Circuit has recognized that "[t]he APA's 'substantial evidence' and 'arbitrary and capricious' standard connotes the same substantive standard of review."  Bangor Hydro-Elec. Co. v. FERC, 78 F.3d 659, 663 n.3 (D.C. Cir. 1996).  So, the inquiry would not vary for present purposes.

designated the administrative record." Id. (quoting Pac. Shores Subdivision, Cal. Water Dist. v.
U.S. Army Corps of Eng'rs, 448 F. Supp. 2d 1, 5 (D.D.C. 2006)); accord Transp. Div. of the Int'l
Ass'n of Sheet Metal, Air, Rail & Transp. Workers v. Fed. R.R. Admin., 10 F.4th 869, 878 (D.C.
Cir. 2019).

A plaintiff in an APA case may add to the proffered record in two ways.  First, a plaintiff
may seek to "complete" the record with "evidence that was allegedly before the agency but
nevertheless excluded from the administrative record." Taylor Energy Co., 2021 WL 538052, at
*2 (quoting Oceana, Inc. v. Ross, 290 F. Supp. 3d 73, 78 (D.D.C. 2018)).  To warrant inclusion, a
plaintiff "must present non-speculative, concrete evidence . . . that the specific documents
allegedly missing from the administrative record were directly or indirectly considered by the
actual decision makers." Id. (quoting Oceana, Inc. v. Pritzker, 217 F. Supp. 3d 310, 316 (D.D.C.
2016)).  Second, a plaintiff may seek to "supplement" the record with "extra-record evidence" that
was "not initially before the agency but that the plaintiff believes should nonetheless be included
in the administrative record." Id. at *3 (quoting Oceana, Inc., 290 F. Supp. 3d at 77).  To
supplement the record, the plaintiff must "demonstrate unusual circumstances justifying a
departure from the general rule." Id.

Here, Monkey Jungle has not presented "non-speculative, concrete evidence" that the
reconsideration letter was "directly or indirectly considered by the actual decision makers." Id. at
*2.  Monkey Jungle relies on an allegation that the letter was sent to SBA on or about July 27,
2022, and the fact that SBA analyzed the seven comparators in its decision. See Pl.'s Mot. at 5–
6.  Yet, those same seven comparators were also listed in the complaint, which was filed before
SBA rescinded and reissued its decision.  At most, Monkey Jungle has provided some evidence
that SBA possessed the letter, but "documents do not necessarily become part of an administrative

record even if the agency possessed them at the time of the decision."  Butte Cnty. v. Chaudhuri, 887 F.3d 501, 507 (D.C. Cir. 2018).  Moreover, SBA has submitted a declaration from an SVOG program analyst attesting that SBA has "no evidence" that this letter, which was apparently sent by Federal Express and not through the SVOG online portal, was "received by the SVOG program office."  Defs.' Reply, Ex. A, Decl. of William A. Biddle [ECF No. 29-1] ¶ 10.  While Monkey Jungle indicated in a subsequent, unrelated filing that this declaration, attached to SBA's reply brief, might be subject to a motion to strike, Notice of Errata [ECF No. 33] ¶ 2, Monkey Jungle never formally objected to this declaration or its contents.  Accordingly, the Court cannot conclude that the letter was ever before the SBA when it reached its decision.  Therefore, it would be inappropriate for the Court to consider the letter as part of the record on review in this case.  See Walter O. Boswell Mem'l Hosp. v. Heckler, 749 F.2d 788, 792 (D.C. Cir. 1984) ("If a court is to review an agency's action fairly, it should have before it neither more nor less information than did the agency when it made its decision.").

Further, Monkey Jungle has not demonstrated any "unusual circumstances justifying" consideration of the letter.  Taylor Energy Co., 2021 WL 538052, at *3.  The letter is largely redundant of the Administrative Record, the Complaint and Amended Complaint, and the summary judgment briefing filed in this action.  And the only notable inclusion beyond the Administrative Record itself is the list of seven comparators.  But SBA did address those comparators, which were listed in the complaint, in its final decision.  A.R. 348.

### B.  Confidential Memorandum

Monkey Jungle further contends, in its combined opposition to SBA's motion and reply brief, that the confidential memorandum analyzing Monkey Jungle's purported comparators should have been included in the record—as part of the agency's decision—and that the Court

should draw an "adverse inference" from SBA's failure to include it.  Pl.'s Reply & Opp'n at 6–10.  SBA responds that the memorandum was not before it when it made the decision, that any omission was harmless, and that an adverse inference is not appropriate.  Defs.' Reply at 5–8.  Here, too, Monkey Jungle has not moved to complete or supplement the record with the confidential memorandum.  And indeed, Monkey Jungle has itself disclaimed that it is seeking relief of this nature.  SBA offered to supplement the record under certain conditions—under seal subject to an attorney's eyes-only privilege—but Monkey Jungle declined.  Defs.' Reply at 5–6 n.2; see id., Ex. B [ECF No. 29-2] (email from Monkey Jungle's counsel declining SBA's offer to supplement the record because "[a]t this stage of this case," submission of the memorandum "would be prejudicial and untimely").[3]  Instead, Monkey Jungle seeks only an "adverse inference based on the absence of the document from the administrative record."  Defs.' Reply, Ex. B; see Pl.'s Reply & Opp'n at 8–10.

"The missing evidence rule provides that 'when a party has relevant evidence within his control which he fails to produce, that failure gives rise to an inference that the evidence is unfavorable to him.'"  Huthnance v. District of Columbia, 722 F.3d 371, 378 (D.C. Cir. 2013) (quoting Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. NLRB ("UAW"), 459 F.2d 1329, 1336 (D.C. Cir. 1972)).  The idea is that "all other things being equal, a party will of his own volition introduce the strongest evidence available to prove his case."  Id. (quoting UAW, 459 F.2d at 1338).  However, the rule is "more a product of common sense than of the common law," UAW, 459 F.2d at 1335, and it is not appropriate to draw an adverse inference when "there are innocuous explanations for the party's failure to introduce the evidence."

---

[3] Monkey Jungle also has not formally challenged SBA's reliance on these emails.

Huthnance, 722 F.3d at 378.  The decision to apply an adverse inference rests in the Court's discretion.  Id. at 379.

Here, no adverse inference is appropriate.  To begin, SBA acknowledged the existence of the memorandum at the time of the decision and offered a reasonable explanation for withholding it—that it contained confidential business information.  A.R. 348.  SBA later offered to share the memorandum with the Court and Monkey Jungle, but Monkey Jungle rejected that offer.  Defs.' Reply, Ex. B.  While Monkey Jungle's position seems to be that SBA made the offer too late, id.; see Pl.'s Reply & Opp'n at 10 (faulting SBA for failing to move to supplement the record on its cross-motion), Monkey Jungle hardly challenged the missing memorandum in its opening brief, see Pl.'s Mot. at 17, and Monkey Jungle could have sought leave to file a sur-reply to respond to the late-filed memorandum if needed.  Finally, applying an adverse inference "may add a fictitious weight" to Monkey Jungle's argument, Huthnance, 722 F.3d at 118 (quoting Burgess v. United States, 440 F.2d 226, 234 (D.C. Cir. 1970)), because SBA presented its topline finding in the final decision—that Monkey Jungle was dissimilar from its purported comparators.  A.R. 348.  And the Court will not lightly assume that the underlying memorandum concludes otherwise.  Accordingly, an adverse inference will not be given.

### C.  Doctored Gorilla Photograph and Errata

The Court must also address Monkey Jungle's submission to SBA of a doctored gorilla photograph and Monkey Jungle's subsequent errata.  In its reply brief, SBA accused Monkey Jungle of submitting a manipulated image in support of its "Cameroon Gorilla Forest Show." Defs.' Reply at 21.  SBA asserted that the gorilla in the image, reproduced below, is "not actually part of the original picture, but rather, was crudely and obviously inserted into the picture using Photoshop or similar image manipulation software."  Id.



Id. (citing photograph at A.R. 29).   Subsequently, Monkey Jungle's counsel "conducted an investigation" and determined that the photograph was "edited for marketing purposes" but was "nevertheless an accurate representation of the standard practice of how Jungle Guides introduce the gorilla for Monkey Jungle's live shows."  Notice of Errata [ECF No. 33] ¶ 4.  Monkey Jungle then filed errata copies of its briefs in this case, omitting reliance on the doctored image.  See Errata Copy of Pl.'s Mot. [ECF No. 33-1]; Errata Copy of Pl.'s Reply & Opp'n [ECF No. 34-1].  The Court has compared the versions and appreciates counsel's acknowledgment of the issue and submission of the errata.  However, this image was submitted to SBA, and, accordingly, on review, the Court will consider the photograph as part of the Administrative Record.  The Court will, however, disregard any argument by Monkey Jungle as to what this image purports to show about the interaction between the Jungle Guide and the gorilla.  See Errata Copy of Pl.'s Reply & Opp'n at 16–17 & n.5.

## II.     SBA's Decision Was Not Arbitrary or Capricious

Having addressed those preliminary matters, the Court now turns to the main event. Monkey Jungle's principal argument is that SBA's conclusion that it is "essentially a zoo," A.R. 346, "runs counter to the actual evidence in the record[] and is not supported by any reasonable analysis." Pl.'s Mot. at 14.  This question is decisive because Monkey Jungle applied for an SVOG grant as a "live venue operator," A.R. 8, and to be eligible as a "live venue operator," "events by performing artists" must be Monkey Jungle's principal business activity.  If Monkey Jungle's principal business activity is operating a zoo, it is undisputedly ineligible for SVOG funding.

Monkey Jungle contends that its Jungle Guides, "similar to animal trainers, create entertaining and educational performances involving live animals" and that its offerings are "akin to performances by animal trainers, who control the performances by directing animals through relevant commands or verbal or physical prompts." Pl.'s Mot. at 11–12.[4]  But merely calling the Jungle Guides "performers," characterizing the animal events as "shows," and describing the Jungle Guides as "creative" individuals who "drive and control the shows to demonstrate live animals' naturalistic, and often entertaining habits," id., does not render SBA's conclusion unreasonable where the evidence that Monkey Jungle submitted about its operations supports SBA's conclusion that the venue is "essentially a zoo."

---

[4] Citing SBA's statement in the guidance document that it would determine what qualified as performing arts, in part, by "consultation with other Federal agencies with area expertise and examination of definitions of what constitutes the performing arts under Federal law," A.R. 369, Monkey Jungle contends that SBA should have considered a Department of Homeland Security regulation that defines participants in the arts to include "principal creators and performers [and] other essential persons such as . . . animal trainers." 8 C.F.R. § 214.2(o)(3)(ii); see Pl.'s Mot. at 11.  It is Monkey Jungle's position that under this regulation, its Jungle Guides are properly characterized as performing artists, and that its shows are qualifying performing arts events.  However, Monkey Jungle fails to explain why SBA should have looked to this immigration regulation characterizing individuals "engaged in the field of arts" to define the meaning of "performing artists" in the context of COVID-19 relief.  See Defs.' Cross-Mot. & Opp'n at 13.  Further, even if this regulation applied, it would have been reasonable for SBA to conclude that the "Jungle Guides" were not "animal trainers," considering Monkey Jungle's repeated statements in the record that it is engaged in the portrayal of "natural" animal activity.  Id.; see A.R. 22, 29, 237.

Start with the "Cameroon Gorilla Forest Show."  In its submission to the agency, Monkey Jungle described the "Cameroon Gorilla Forest Show" as a showcase for the audience to "[e]xperience the wonder of gorillas as our King of the Jungle and your Jungle Guide interact at a distance, showcasing natural behaviors and exercise routines."  A.R. 347 (alteration in original) (citing screenshots from Monkey Jungle's website at A.R. 342).  While the submission uses the terms "interact[ing]" and "showcasing," the use of these terms does not compel the conclusion that the performance is artistic in any way.  Rather, the description suggests that what is on display is the animals, and that the Jungle Guide merely facilitates that display for the visitor.  And indeed, the photograph that Monkey Jungle submitted to the agency depicts a man apparently talking to an audience as a (photoshopped) gorilla sits behind him in a tropical enclosure.  A.R. 29.

Next consider the "Wild Monkey Swimming Pool Show."  In its submission, Monkey Jungle described the show as an opportunity to watch as a "Jungle Guide calls the troop up from the forest for this fascinating show featuring natural behavior brought to life."  A.R. 341.  The image submitted shows a monkey crossing a rope over a pool of water.  Id.  Monkey Jungle emphasizes that the Jungle Guide "calls the troop," but again, the Jungle Guide's involvement does not automatically convert the show into a performing arts event.  Pl.'s Reply at 13.  The record evidence is not at all clear about what role the Jungle Guide plays here.



A.R. 341.

Finally, consider the "Amazonian Rainforest Show," which Monkey Jungle described as showcasing monkeys "roam[ing] as they please" and letting "visitors . . . observe them behaving as they would in the wild."  A.R. 342.  Monkey Jungle seeks to characterize this show as a "live interactive performance show[]" and a "comedic show," Pl.'s Reply & Opp'n at 14, and it points to a photo purportedly demonstrating this, id.  But the submitted photo depicts a man smiling as a monkey crawls from his forearm to his opposite hand.  A.R. 342.  The photo depicts no creative performance and it does not render unreasonable the conclusion that the monkey itself is the primary display.



19

Id.[5]

Monkey Jungle insists that SBA erred by concluding that these shows were "primarily animal exhibitions."  Id. at 347; see Pl.'s Mot. at 14–15, Pl.'s Reply & Opp'n at 12–14.  With respect to the Cameroon Gorilla Forest Show, Monkey Jungle says that it was "patently unreasonable" for SBA to find that this performance was a "mere exhibition" because it "involves its Jungle Guides prompting and leading the gorilla."  Pl.'s Reply & Opp'n at 12.  In Monkey Jungle's view, even natural behaviors can be performing arts when "prompted by a performing artist and engaging personality," just like a "bucking bronco or a bull charging at a red cape" and a "lion that can roar on cue or jump through a hoop."  Id. at 15.  Monkey Jungle contends that its shows are nothing like a zoo, because at a zoo, "patrons generally walk around from cage to cage and enclosure to enclosure, often simply watching animals sleep or graze."  Id. at 12.  Yet this argument oversimplifies SBA's analysis and ultimately fights a straw man.  SBA concluded that Monkey Jungle was "essentially a zoo," recognizing that, although it offered shows, those shows were "primarily animal exhibitions."  The decision did not rest on a rigid concept of what constitutes a zoo, but instead involved an assessment of what was primarily on display.

Recall that Monkey Jungle is eligible for a grant only if it is primarily engaged in presenting "events by performing artists," or, put differently, performing arts events.  The evidence in the record demonstrates that Monkey Jungle hosts scheduled shows, in its eco-park, in which its employees interact with animals engaged in natural behavior.  It was reasonable, then, for SBA to conclude that Monkey Jungle's shows were "primarily animal exhibitions" and that Monkey

---

[5] Monkey Jungle does not attempt to argue that its fourth and final show—The Wings of Love Exhibit—involves SVOG-qualifying performances.  Pl.'s Reply at 14.

Jungle's primary business activity is exhibiting animals, not engaging in performing arts. A.R. 347.[6]

To the extent that the evidence might also support a conclusion that Monkey Jungle is like a circus, or that Monkey Jungle's shows have some comedic or artistic component, the Court will not overturn the agency's decision on that basis. An agency's decision is valid "even though a plausible alternative interpretation of the evidence would support a contrary view." Dillmon v. Nat'l Transp. Safety Bd., 588 F.3d 1085, 1089 (D.C. Cir. 2009) (quoting Chritton v. Nat'l Transp. Safety Bd., 888 F.2d 854, 856 (D.C. Cir. 1989)). Under the APA, the Court is not tasked with substituting its judgment for the agency's, but rather asking whether the agency has "articulate[d] a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" Epsilon Elecs., Inc. v. U.S. Dep't of Treasury, Off. of Foreign Assets Control, 857 F.3d 913, 918 (D.C. Cir. 2017) (quoting State Farm, 463 U.S. at 43). Here, the agency recognized that Monkey Jungle characterized itself as "offering live entertainments with performers and animals," but concluded that the evidence in the record was to the contrary. A.R. 346. Specifically, SBA concluded that "Monkey Jungle's descriptions of its shows confirm that they are primarily animal exhibitions." Id. at 347. This conclusion was not arbitrary or capricious.

Monkey Jungle's other arguments lose their bite against the weight of the record evidence. Monkey Jungle argues that "the fact that these performances are conducted on a set schedule directly contradicts SBA's position that Monkey Jungle 'simply display[s] animals' or is 'essentially a zoo.'" Pl.'s Mot. at 12 (alteration in original) (quoting A.R. 346, 348). But the fact

---

[6] Monkey Jungle harps on SBA's use of the word "exhibition," contending that it is either at odds with the facts, because Monkey Jungle does more than exhibit animals in enclosures, or it is proof that Monkey Jungle portrayed artistic events, because "exhibition" may be defined to include displays of skilled performers. See Pl.'s Mot. at 14–15. This argument is unavailing because it is apparent from SBA's decision that by describing the shows as "animal exhibitions," the agency considered the role of the Jungle Guides vis-à-vis the animals and (reasonably) determined that the shows were still animal exhibitions. See A.R. 347–48.

of a set schedule lost much of its significance once SBA concluded that the shows on the schedule were not qualifying performing arts events. Likewise, the fact that Monkey Jungle has "dedicated performance spaces with audience seating," Pl.'s Reply & Opp'n at 16, is less meaningful considering the content of these performances. Further, the fact that Monkey Jungle employs paid performers "who bring their own individual style and creativity to interacting with animals," Pl.'s Mot. at 11–12, does not render SBA's conclusion unreasonable in light of the content of those performances. And SBA's failure to rely on Monkey Jungle's Certificate of Incorporation, which describes its purpose as to "conduct and manage . . . productions or amusement enterprises" and to "employ performers," A.R. 159–65; see Pl.'s Mot. at 8, 12, does not move the needle, because the Certificate of Incorporation is dated July 1, 1957, and the evidence in the record indicates that Monkey Jungle has fundamentally altered its activities since then. See Defs.' Cross-Mot. & Opp'n at 15–16. Whereas from the 1950s to the early 1990s, Monkey Jungle offered "circus show[s]" with "[c]himps performing on bikes [and] tightrope," now Monkey Jungle offers an "Eco-Show interpretation: Gorilla performs natural behaviors." A.R. 29.

Page 4 of 5

1950's - early 1990's circus show style at **Monkey Jungle Theatre:** Chimps performing on bikes, tightrope, etc



Mid 1990's into 21st century Eco-Show interpretation: Gorilla performs natural behaviors



Id.  In sum, SBA's conclusion that Monkey Jungle is ineligible for an SVOG grant as a "live venue operator" is not arbitrary or capricious.

### III.    SBA Adequately Distinguished Monkey Jungle from the Comparators

Monkey Jungle next contends that SBA's decision was arbitrary and capricious because it treated Monkey Jungle "disparately from other similarly situated businesses that received SVOG awards."  Pl.'s Mot. at 16 (cleaned up).  Monkey Jungle's argument rests on seven comparators— "three circuses, three rodeos, and one company offering live performances with horses"—that received SVOG assistance.  Id.  Monkey Jungle contends that SBA did not sufficiently distinguish these comparators and that is "fatal to its final decision."  Id. at 17.

It is fundamental that "an agency may not treat like cases differently."  Eagle Broad. Grp. v. FCC, 563 F.3d 543, 551 (D.C. Cir. 2009).  "Where an agency applies different standards to similarly situated entities and fails to support this disparate treatment with a reasoned explanation and substantial evidence in the record, its action is arbitrary and capricious and cannot be upheld." Burlington N. & Santa Fe Ry. Co. v. Surface Transp. Bd., 403 F.3d 771, 777 (D.C. Cir. 2005); see Sokol World Ent., Inc. v. SBA, Civ. A. No. 21-2385 (TSC), 2022 WL 4547540, at *5 (D.D.C. Sept. 28, 2022).  However, a court "may permit agency action to stand without elaborate explanation where distinctions between the case under review and the asserted [comparator] are so plain that no inconsistency appears."  Bush-Quayle '92 Primary Comm., Inc. v. FEC, 104 F.3d 448, 454 (D.C. Cir. 1997)); see also State Farm, 463 U.S. at 43 (noting that a court may "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned" (internal quotations omitted)).

To begin, it is not apparent to the Court that SBA was required to consider Monkey Jungle's purported comparators at all.  As the Court previously explained, the list of comparators was only

presented in Monkey Jungle's reconsideration letter and the judicial complaints, neither of which is part of the Administrative Record.  Cf. Sokol World Ent. Inc., 2022 WL 4547540, at *5 (permitting SVOG applicant to supplement the record with a list of comparators based on evidence that SBA affirmatively discouraged applicants from submitting comparator information).

Nonetheless, in its final decision, SBA considered the seven comparators and concluded that they were dissimilar because they "do not simply display animals or provide interaction with animals," but rather "conducted significant live events with skilled performers which are the principal attraction of the applicant's business." A.R. 348.  While SBA's treatment of the comparators was relatively brief, it rested on a basis well-supported by the rest of the agency's decision.  That is, Monkey Jungle is "essentially a zoo" engaged "primarily" in the "exhibition of animals."  Considering the statute's definition of live performing arts organizations as entities with a "principal business activity" of putting on "events by performing artists," § 9009a(a)(3)(A)(i)(I) (emphasis added), it was appropriate to distinguish the comparators on the grounds that they were not primarily engaged in displaying animals and, instead, had a significant live performance component.  Having concluded that Monkey Jungle, on the other hand, is "essentially a zoo," SBA was not required to detail a comprehensive analysis of circuses, rodeos, and equestrian performances.

Monkey Jungle protests that the entities are similar because they all involve "human entertainers interacting with animals for audience entertainment."  Pl.'s Reply & Opp'n at 26.  But it fails to make any "significant showing" that these entities are genuinely "analogous."  Republic Airline Inc. v. U.S. Dep't of Transp., 669 F.3d 296, 300 (D.C. Cir. 2012) (quoting LeMoyne–Owen Coll. v. NLRB, 357 F.3d 55, 61 (D.C. Cir. 2004)).  Monkey Jungle further asks the Court to read the agency's use of the phrase "significant live events" to mean that the problem with

Monkey Jungle was that its events were too small.  See Pl.'s Mot. at 18; Pl.'s Reply & Opp'n at 25.  However, this is a strained, implausible reading of SBA's decision.

Finally, Monkey Jungle cites MomoCon v. Small Business Administration, Civ. A. No. 21-2386 (RC), slip opinion, (D.D.C. Feb. 10, 2022), ECF No. 32, but that case is readily distinguishable.  In MomoCon, the applicant named comparators in its application and offered evidence to the agency of relevant similarities, including "citations to, and quotes drawn from, the competitors' websites."  Id. at 11; see id. at 3.  The administrative record further contained statements from industry groups remarking on the similarities between MomoCon and the successful grantees. Id. at 12.  SBA failed to address the comparators at all. Id. at 13–14.  Here, by contrast, Monkey Jungle did not identify any comparators in its application.  Rather, Monkey Jungle only raised this issue in a reconsideration letter, which SBA says it never received or considered, and in its federal complaint.  And Monkey Jungle never provided evidence supporting its contention that it was factually similar to these other entities.  Nonetheless, SBA considered the comparators in its final decision and articulated a reasonable basis for distinguishing them.[7]

## Conclusion

For the reasons set forth above, the Court will deny Monkey Jungle's motion for summary judgment and grant SBA's cross-motion for summary judgment.  An Order consistent with this Memorandum Opinion will issue on this date.

---

[7] The Court notes that, even if it concluded that SBA did not adequately detail its reasons for distinguishing Monkey Jungle from the comparators, the proper remedy would not be to order SBA to issue a grant to Monkey Jungle.  See Pl.'s Reply & Opp'n at 27.  Rather, the remedy would be to review the confidential memorandum and, if necessary, remand to the agency for further analysis.  See MomoCon at 14; Sokol World Ent., 2022 WL 4547540, at *6.  Insofar as SBA concluded that it improperly awarded grants to other zoo-like entities, the further step might be for SBA to recoup those grant funds, not to improperly issue grant funds to Monkey Jungle.  See MomoCon, LLC v. SBA, Civ. A. No. 21-2386 (RC), 2023 WL 8880335, at *10–11 (D.D.C. Dec. 22, 2023).

/s/
_____
JOHN D. BATES
United States District Judge

Dated: <u>August 29, 2024</u>